JOHN NEWMAN v. THE STATE.

*No. 27.   Decided April 29.*

1. **Practice on Appeal—Evidence—Bill of Exception.**—The action of the trial court in receiving alleged incompetent testimony is not reversible on appeal, in the absence of a bill of exceptions disclosing objections urged to its admission at the time it was offered.

2. **Murder of the First Degree—Circumstantial Evidence.**—See facts stated for evidence which, though circumstantial, are held by the court amply sufficient to support a conviction for murder in the first degree, with the penalty assessed at a life term in the penitentiary.

APPEAL from the District Court of Wilson.   Tried below before Hon. GEORGE McCORMICK.

Appellant was indicted for the murder of one Mollie Toodle, and upon his trial was convicted of murder of the first degree, the punishment assessed being a life term in the penitentiary.   The evidence showed that appellant killed the woman because she refused to marry him.   It was circumstantial, but a substantial statement of the important facts is as follows:  On the morning of July 24, 1892, at the house of Mollie Toodle, the dead bodies of Mollie Toodle and Charles Woods, an old, feeble-minded man, who lived at her house, were found, their skulls having been crushed with some blunt instrument.

John Carter testified, for the State, that he was acquainted with deceased, and was at her house between 1 and 2 o'clock of the night of the murder, when a man came to the door, and deceased jumped up and went to the door, and said to the man, "John, what are you doing here? I told you to stay away from here.   You want to kill me."   The man made no reply, but simply got back out of the door.   That he recognized defendant as the man who came to the door.   That next morning, about 9 or 10 a. m., he heard that deceased had been killed.   On cross-examination he said, that deceased told him that defendant had been living on her place for two years before this, and working for her, and that he wanted to marry her, and had treatened to kill her if she did not marry him, and that she had refused to marry him, and had ordered him to stay away from her.

One Ynocinto Zalazar testified, for the State, that he knew deceased

and defendant. That on the evening of the murder, about dark, he saw defendant near his house. He had his horse tied to the fence, and his saddle was off his horse and was just lying over the fence near by. That defendant was going away from the house when first seen, and made no reply when called to.

One Cornelius Meyers testified, for the State, that he went into the house and found deceased alive, but insensible and unable to speak; that her skull was crushed in two places, one hole being in the front and the other in the back of the head; and that she died in about an hour afterwards. "I saw an axe with blood and hair on the back of it."

Several witnesses testified, for the State, that they knew defendant; that he told them that deceased had not treated him right, for he had worked hard for her to help her pay for her place, and she had promised to marry him, and now she would not marry him; and that he did not like the way she had treated him, as it was not treating him right.

One George H. Jennings, a justice of the peace, testified, for the State, that he examined the premises, and found tracks all around, made by the people who had come there. There was nothing uncommon about the tracks, except those of one person, which led from the house to a peach tree, about thirty steps from the house, and at the tree there was appearance on the ground that the person who had made those particular tracks had stood around under the tree for sometime. These tracks were made by shoes run down on the outside, and across the ball of each shoe was worn out, and in the left track a portion of the sole of the shoe that made it had been cut away or off, and it had not been cut straight, and one of the shoes made a track that showed it had quite a hole in the heel. These peculiar tracks led out of the yard into a cotton patch. The tracks were made by a person who wore about a No. 11 shoe.

The sheriff testified, that he found the track of a person that led to and from the house to a peach tree, about thirty steps from the house, and under the tree there was a sign where a person had stood and sat down; that these tracks led to and from the house to the tree several times; that he found the same track leading from the house across the yard, going under a wire fence, into a cotton field, and followed these tracks for several hundred yards, across the field, to another wire fence, and there the tracks went out of the cotton field, under the fence, and led in a round-about way, towards a fence near the Zalazar place; that when defendant was arrested, he had him pull off the shoes he had on, and had them compared with the tracks.

One T. S. Wyatt testified, for the State, that the sheriff gave him a pair of shoes on the day after the discovery of the dead body, and that he went to the place of killing, and fitted the shoes, in a number of places, to tracks along the trail, both in the yard and in the cotton patch, and the shoes fitted exactly.

One C. B. Stevenson testified, that he was deputy sheriff, and had arrested defendant. He had on the shoes that the sheriff had him take off. That he examined defendant's clothing, and found some dark spots on the sleeves of his shirt, which looked like blood.

No brief for appellant.

*R. L. Henry*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at a life term in the penitentiary. One or more grounds of the motion for a new trial are based upon the admission of testimony. Bills of exception were not reserved to the ruling of the court in admitting this evidence, and the supposed error will not be revised. The action of the trial court in receiving alleged incompetent evidence is not revisable on appeal, in the absence of a bill of exceptions disclosing objection urged to its admission at the time it was offered. Conner v. The State, 17 Texas Cr. App., 1; Roe v. The State, 25 Texas Cr. App., 33.

2. The charge is not subject to the criticism sought to be interposed upon the ground that "it is vague and uncertain and misleading." It is a full, fair exposition of the "law of the case," and the portion complained of is correct, and not subject to criticism.

3. The verdict and judgment are supported by the evidence. The testimony is circumstantial, and too voluminous to be inserted in an opinion. It shows, in brief, that on the night of the homicide, between the hour of 2 o'clock in the morning and daylight, the defendant entered the house of the deceased woman, and because she had continuously refused to marry him, took her life by knocking her in the head with an axe; that he then went to an adjoining room, where slept an aged man of simple mind and weak intellect, and in the same manner, by the same means, took his life. The evidence in but few cases dependent upon circumstantial evidence has more clearly demonstrated the guilt of an accused than the case now before us. The judgment is affirmed.

*Affirmed.*

Judges all present and concurring.